UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LUCILLE OLSEN,

    Plaintiff,

    v.

EXPERIAN INFORMATION SOLUTIONS, INC.,

    Defendant.

Case No. 16-cv-05707-PJH

**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**

Re: Dkt. No. 18

Defendant Experian Information Solutions, Inc.'s motion to dismiss came on for hearing before this court on March 1, 2017. Plaintiff Lucille Olsen appeared through her counsel, Elliot Gale. Defendant Experian Information Solutions, Inc. appeared through its counsel, Ben Lee. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby rules as follows.

## BACKGROUND

**A.   Chapter 13 Bankruptcy**

Chapter 13 bankruptcy allows debtors with regular income to "repay creditors in part, or in whole, over the course of a three-to-five-year period." In re Blendheim, 803 F.3d 477, 485 (9th Cir. 2015). Under Chapter 13, the debtor proposes a debt repayment plan that must comply with a number of statutory requirements. Id. at 485–86. "A Chapter 13 debtor seeking a discharge typically proposes a plan in which the discharge is granted at the end of the proceeding, after the debtor completes all required payments under the plan." Id. at 486. If the Chapter 13 plan satisfies all of the statutory requirements, the bankruptcy court approves or "confirms" the plan. 11 U.S.C. § 1325(a); In re Flores, 735 F.3d 855, 857 (9th Cir. 2013).

If the debtor makes the payments under the confirmed plan, the bankruptcy court will grant a discharge of the debts, which "releases debtors from personal liability on

claims and enjoins creditors from taking any action against the debtor." Blendheim, 803 F.3d at 486–87. "Many debtors, however, fail to complete a Chapter 13 plan successfully." Harris v. Viegelahn, 135 S. Ct. 1829, 1835 (2015). If the debtor fails to make the required payments, he may either "convert [the] Chapter 13 case to a [bankruptcy] case under a different chapter," or dismiss the action. Blendheim, 803 F.3d at 487. The effect of dismissal is to restore the legal status quo prior to the Chapter 13 filing: "dismissal returns to the creditor all the property rights he held at the commencement of the Chapter 13 proceeding and renders him free to exercise any nonbankruptcy collection remedies." Id. at 487.

**B.     The Complaint**

The complaint in this case is one of more than two hundred similar actions in this district filed by the Sagaria Law, P.C. firm against consumer credit reporting agencies in late 2016. All of these cases employ the same form complaint, with about a dozen paragraphs individualized for each plaintiff. The remainder of the complaint, including the causes of action, is copied nearly verbatim in each case.

Plaintiffs in these cases are individuals who filed for Chapter 13 bankruptcy and allege that their debts were reported inaccurately in light of their confirmed Chapter 13 plan. Experian Information Solutions, Inc. ("Experian"), Equifax, Inc. ("Equifax"), or both credit reporting agencies ("CRAs") are named as defendants. Also named as defendants in most of the cases are "furnishers" of credit information, such as Chase Bank USA, N.A. ("Chase") and Bank of America, N.A. ("BANA").

The complaint accuses CRAs and furnishers of "ignor[ing] credit reporting industry standards for accurately reporting bankruptcies." Compl. ¶ 7. Allegedly, this inaccurate reporting is an effort to perpetuate the "myth" that filing for bankruptcy ruins consumers' credit scores for years. Compl. ¶¶ 3–7.

The complaint explains in some detail how a consumer's FICO credit score is calculated, and how the score derives from information that furnishers report to CRAs. Compl. ¶¶ 20–36. Plaintiff then describes the Metro 2 credit reporting standards

promulgated by the Consumer Data Industry Association (the "Metro 2 standards" or "CDIA guidelines"), which plaintiff alleges is the "industry standard for accurate credit reporting." Compl. ¶¶ 37–52. The Metro 2 standards have different "CII indicator" codes that are used to note the filing and discharge of Chapter 7 and 13 petitions. Compl. ¶¶ 55–62. Plaintiff alleges that the CII indictor "D" is used when a Chapter 13 petition has been filed, but no discharge yet entered. Compl. ¶ 59.

The complaint alleges that, prior to the confirmation of a Chapter 13 plan, the "accepted credit reporting standard" is to "report the outstanding balance amount as of the date of filing" of the bankruptcy petition, and to note the bankruptcy filing with CII indicator code D. Compl. ¶¶ 73, 75, 76–77. Post-confirmation, however, plaintiff alleges that the balances should be updated to reflect the confirmed Chapter 13 plan. Reporting ongoing past due amounts and late payments, instead of only indicator D, is "not generally accepted as accurate by the credit reporting industry." Compl. ¶ 84. Plaintiff alleges that the industry standard is to "report the balance owed under the Chapter 13 plan terms," which is typically lower than the original amount, and to "report a $0.00 balance" if the confirmed plan does not call for any payments on that particular debt. Compl. ¶¶ 80–81.

Olsen filed for Chapter 13 bankruptcy protection on October 16, 2015. Compl. ¶ 87. Olsen's Chapter 13 plan was confirmed on December 3, 2015. See No. 2:15-bk-25976-SK Dkt. 13 (Bankr. C.D. Cal.). She ordered credit reports from the CRAs on March 17, 2016, and filed a dispute letter with the CRAs alleging inaccuracies. Compl. ¶¶ 92, 94. On August 23, 2016, she ordered a second set of credit reports, but found that the inaccuracies remained and that her credit score had improved only slightly. Compl. ¶¶ 97–98.

Plaintiff asserts two claims, one under the Fair Credit Reporting Act ("FCRA") and one under the California Consumer Credit Reporting Agencies Act ("CCRAA"). The first cause of action alleges that the furnisher and CRA violated FCRA "by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate information." This

cause of action relies repeatedly on the alleged failure of the CRA and furnisher to "comport with industry standards." The second cause of action under CCRAA is made only against the furnisher, alleging that it "intentionally and knowingly reported misleading and inaccurate account information to the CRAs that did not comport with well-established industry standards."

## DISCUSSION

### A.  Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199–1200 (9th Cir. 2003). To survive a motion to dismiss for failure to state a claim, a complaint generally must satisfy the requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899–900 (9th Cir. 2007).

Legally conclusory statements, not supported by actual factual allegations, need not be accepted by the court. Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is

entitled to relief.'" Id. at 679. In the event dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. See Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

**B.    Legal Analysis**

Defendant seeks dismissal on two different grounds. First, it argues that the complaint fails to plead an "inaccuracy" in reporting that is actionable under FCRA as a matter of law. Second, it argues that the complaint fails to sufficiently allege either actual or statutory damages.

### 1.    Actual Inaccuracy under FCRA

Defendant's primary basis for dismissal is that the complaint fails to allege any "inaccuracy" under FCRA. Plaintiff's FCRA claims are made pursuant to 15 U.S.C. §§ 1618s-2(b) and 1618i-a(1). Under § 1618i-a(1), after receiving notice of a dispute from a consumer, a CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information." 15 U.S.C. § 1618i-a(1). Under § 1618s-2(b), after receiving a notice of dispute from a CRA, a furnisher must conduct a reasonable investigation with respect to the disputed information and report the results to the CRA. Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1154, 1157 (9th Cir. 2009). FCRA creates a private right of action for willful or negligent noncompliance with these requirements. Id. at 1154.

To state an FCRA reinvestigation claim, a plaintiff must show that: (1) he found an inaccuracy in his credit report; (2) he notified a CRA; (3) the CRA notified the furnisher of the information about the dispute; and (4) the furnisher and/or CRA failed to reasonably investigate the inaccuracies. Biggs v. Experian Info. Sols., Inc., No. 5:16-CV-01507-EJD, 2016 WL 5235043, at *1 (N.D. Cal. Sept. 22, 2016); Gorman, 584 F.3d at 1154–57. Although the complaint does not allege specific facts about the furnisher's and/or CRA's investigations, plaintiff does allege generally that any reasonable investigation would have revealed that the reporting was not in compliance with industry standards.

Inaccuracy is a required element of these FCRA claims.  Carvalho v. Equifax Info. Servs., LLC, 629 F.3d 876, 890 (9th Cir. 2010) ("Although the FCRA's reinvestigation provision, 15 U.S.C. § 1681i, does not on its face require that an actual inaccuracy exist for a plaintiff to state a claim, many courts, including our own, have imposed such a requirement."); Gorman, 584 F.3d at 1163 ("[A] furnisher does not report 'incomplete or inaccurate' information within the meaning of § 1681s–2(b) simply by failing to report a meritless dispute.").  To be inaccurate, information must be either "patently incorrect" or "misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions."  Gorman, 584 F.3d at 1163.

The complaint alleges several different types of inaccuracies.  Plaintiff's primary legal theory is that, after a Chapter 13 plan is confirmed, it is inaccurate to report that an account is delinquent or to report the loan balance per the original loan terms.  Rather, the lower amount owed per the confirmed Chapter 13 plan must be reported instead. Second, plaintiff alleges that credit reporting that fails to comply with the Metro 2 standards is necessarily inaccurate.  Finally, plaintiff alleges various other inaccuracies, such as failing to report a CII D indicator, reporting a debt as "in collections" or "charged off" despite the confirmed plan, and/or the failure to report that an account is being disputed.

### i. Reporting Pre-confirmation Account Balances and Delinquencies During the Pendency of Bankruptcy

Plaintiff's primary theory of inaccuracy is premised on the effect that the confirmed Chapter 13 plan has on plaintiff's debts.  Plaintiff argues that, prior to confirmation, the industry standard is to report the outstanding balance on the loan at the time the bankruptcy petition was filed, and to note the bankruptcy filing with the CII D indicator. After a Chapter 13 plan is confirmed, however, plaintiff argues that because the confirmation order is a binding "final judgment" that modifies the status of the debt, it is inaccurate to continue reporting the outstanding balance per the original loan terms. Rather, the amount required to be paid to obtain a discharge under the Chapter 13 plan

must be reported, with a loan balance of $0.00 reported if the confirmed plan does not call for any payments on that debt.

Plaintiff's legal theory of inaccuracy is not a novel issue in this district. The unanimous view of the judges in this district that have considered the matter is that, at least prior to discharge, reporting a loan balance and delinquent status per the original terms—as opposed to the modified terms of the confirmed Chapter 13 plan—is neither inaccurate nor misleading under FCRA. See, e.g., Doster v. Experian Info. Sols., Inc., No. 16-CV-04629-LHK, 2017 WL 264401, at *4–*5 (N.D. Cal. Jan. 20, 2017) ("[A]lthough reporting delinquent payments may be misleading if the debts have been discharged in bankruptcy, 'it is not misleading or inaccurate to report delinquent debts that have not been discharged' . . . . [because] the legal status of a debt does not change until the debtor is discharged from bankruptcy.") (collecting cases); Biggs, 2016 WL 5235043, at *2 ("Courts in this district have held that the FCRA does not prohibit the accurate reporting of debts that were delinquent during the pendency of a bankruptcy action . . . so long as the bankruptcy discharge is also reported if and when it occurs."); Blakeney v. Experian Info. Sols., Inc., No. 15-CV-05544-LHK, 2016 WL 4270244, at *5 (N.D. Cal. Aug. 15, 2016) ("[C]ourts in this district have consistently held that it is not misleading or inaccurate to report delinquent debts that have not been discharged."); Mortimer v. JP Morgan Chase Bank, N.A., No. C 12-1936 CW, 2012 WL 3155563, at *3 (N.D. Cal. Aug. 2, 2012) ("While it might be good policy in light of the goals of bankruptcy protection to bar reporting of late payments while a bankruptcy petition is pending, neither the bankruptcy code nor the FCRA does so."); Harrold v. Experian Info. Sols., Inc., 2012 WL 4097708, at *4 (N.D. Cal. Sept. 17, 2012) ("[R]eports of delinquencies in payment while bankruptcy proceedings are still ongoing is not 'incomplete or inaccurate' information.").

These decisions, of course, are not binding on this court. Nonetheless, the court finds their reasoning to be persuasive. Although the Chapter 13 plan and the bankruptcy petition may limit the collection activities of creditors, it does not mean that an "individual is not obliged to make timely payments on his accounts while his petition for bankruptcy

is pending." Mortimer, 2012 WL 3155563 at *3. Because "the debt and its delinquent status still exist . . . it is not inaccurate or misleading to report that information to a CRA." Biggs, 2016 WL 5235043 at *2. The court therefore finds that, at least when the bankruptcy filing and the account's disputed nature are noted, reporting balances and delinquencies per the original loan terms is neither "patently incorrect" nor "misleading." See Gorman, 584 at 1163.

Plaintiff's contrary arguments miss the mark. Plaintiff's repeated themes that the confirmed plan is a "final judgment" with "res judicata effect" or a "new contract" obscure the issues. To be sure, a confirmed plan may have res judicata effects on some creditor claims that could have been brought in the bankruptcy proceeding. See, e.g., In re Brawders, 503 F.3d 856, 867 (9th Cir. 2007) (res judicata precludes collateral attack on confirmation order). The fact that a confirmed plan may have res judicata effects, however, does not imply that reporting the debts per their original terms is therefore "misleading" under FCRA. See Jaras v. Experian Info. Sols., Inc., No. 16-CV-03336-LHK, 2016 WL 7337540, at *4 (N.D. Cal. Dec. 19, 2016) ("[E]ven if a confirmation order constitutes a final judgment, it constitutes a final judgment only as to the manner in which the debtor will discharge his financial obligations, not the legal validity of the debt.") (quotations omitted). Similarly, although a Ninth Circuit bankruptcy appeals panel has analogized a confirmed Chapter 13 plan to a "contract," In re Than, 215 B.R. 430, 435 (B.A.P. 9th Cir. 1997), that does not mean that this "contract's" promises govern how credit information must be reported under FCRA. A more natural understanding of the terms of the new contract is that it sets the conditions by which debtors may obtain a discharge. Jaras, 2016 WL 7337540, at *4. In short, a confirmed plan does not dictate how historical credit information must be reported under FCRA.

Plaintiff also relies on a statutory argument based on the effect of 11 U.S.C. sections 1332(b)(2) and 1337(a) and a "critical distinction" between the terms "debt" and "claim" as used in the Bankruptcy Code. Section 1332(b)(2) provides that a confirmed plan may "modify the rights of . . . holders of unsecured claims," and section 1137(a)

8

establishes that a confirmed plan "bind[s] the debtor and each creditor."  11 U.S.C. §§ 1332(b), 1337(a).  Plaintiff asserts, without citation to authority, that "claims" constitute a creditor's calculation of the balance due prior to litigation, whereas a "debt" constitutes the balance owed post-litigation.  This claim/debt distinction is significant because furnishers do not report debts per se, but only claims.  And it is the <u>claim</u>, not the debt, that is modified in a confirmed Chapter 13 plan by operation of sections 1332(b)(2) and 1337(a).  Thus, because creditors are reporting "claims" and the confirmed plan has "modified" those claims, reporting must change post-confirmation.

This argument can be quickly dismissed because it relies so heavily on a purported distinction between "claims" and "debts."  However, Congress intended that "the meanings of 'debt' and 'claim' be coextensive."  <u>Penn. Dep't of Pub. Welfare v. Davenport</u>, 495 U.S. 552, 558 (1990); <u>accord</u> <u>In re Davis</u>, 778 F.3d 809, 813 (9th Cir. 2015).  Plaintiff is correct that a Chapter 13 plan may "modify" the claims of creditors, 11 U.S.C. § 1332(b)(2), and that, upon confirmation, the plan binds debtor and creditor, 11 U.S.C. § 1327(a).  While these sections may prevent creditors from <u>collecting</u> on a loan pursuant to the original terms while the bankruptcy petition is pending, it does not follow that reporting those terms is necessarily "misleading" under FCRA.  "[T]he debt and its delinquent status still exist" prior to discharge.  <u>Biggs</u>, 2016 WL 5235043 at *2.

For the foregoing reasons, the court finds that, as a matter of law, the complaint fails to state a claim under FCRA to the extent that the alleged "inaccuracy" is premised on either (i) reporting the accurate outstanding balance as per the original terms, instead of the loan balance as modified by a Chapter 13 plan; or (ii) reporting a balance as delinquent or past due, if delinquency is factually accurate per the original loan terms.

    **ii. Whether Noncompliance with Metro 2 Standards Necessarily Renders Reporting "Misleading"**

Plaintiff also alleges that the reporting is inaccurate because it does not comport with the credit reporting industry's Metro 2 standards.

///

1       Again, this issue is not a novel one in this district. Other courts have found that
2 noncompliance with Metro 2 standards, standing alone, does not make otherwise
3 factually accurate reporting "misleading." <u>Giovanni v. Bank of Am., Nat. Ass'n</u>, No. C 12-
4 02530 LB, 2013 WL 1663335, at *6 (N.D. Cal. Apr. 17, 2013) (failure to comply with
5 Metro 2 standards is not misleading because the complaint "does not allege that [the
6 furnisher] was required to follow the Metro 2 Format . . . or that deviation from those
7 instructions constitutes an inaccurate or misleading statement."); <u>Mortimer</u>, 2013 WL
8 1501452, at *12 (N.D. Cal. Apr. 10, 2013) ("[A]lleged noncompliance with the Metro 2
9 Format is an insufficient basis to state a claim under the FCRA."); cf. <u>Nissou-Rabban v.</u>
10 <u>Capital One Bank (USA), N.A.</u>, 2016 WL 4508241, at *5 (S.D. Cal. June 6, 2016)
11 ("[D]eviation from Metro 2, the industry standard and its chosen method of reporting, <u>may</u>
12 <u>be</u> misleading in such a way and to such an extent that it can be expected to adversely
13 affect credit decisions.") (quotation omitted) (emphasis added).
14       This court finds that noncompliance with Metro 2 standards does not, in and of
15 itself, render reporting misleading. FCRA does not mandate compliance with Metro 2 or
16 any other particular set of industry standards. Rather, the test is whether a reasonable
17 potential creditor would find the reporting "misleading in such a way and to such an
18 extent that it can be expected to adversely affect credit decisions." <u>Gorman</u>, 584 F.3d at
19 1163. This requires something more than the mere fact of noncompliance with an
20 industry standard, although noncompliance may be relevant to whether reporting is
21 "misleading." The context of the reporting must be considered.
22       For example, Judge Chen recently observed that "reporting of the bankruptcy filing
23 substantially diminishes the argument that failure to comply with Metro 2 reporting format
24 could be misleading." <u>Mestayer v. Experian Info. Sols., Inc.</u>, No. 15-CV-03645-EMC,
25 2016 WL 3383961, at *2 (N.D. Cal. June 20, 2016). If the bankruptcy filing is noted on
26 the credit report, and it is clear to a reasonable potential creditor that the balances
27 reported are the original loan terms (not the balances as modified by the Chapter 13
28 plan), then there is nothing inherently misleading about the reporting. <u>See id.</u> Even

accepting plaintiff's allegation that Metro 2 is the generally-accepted industry standard, noncompliance does not necessarily make reporting "misleading" if a reasonable creditor is able to accurately interpret the reporting in context.

Thus, to the extent that the complaint seeks to allege inaccuracies based only on the fact of noncompliance with Metro 2, the motion to dismiss must be granted. However, because additional allegations could save the Metro 2 theory, the court will provide plaintiff leave to amend to plead additional facts that explain why the noncompliance with Metro 2 guidelines would be actually misleading in context.

### iii. Other Alleged Inaccuracies

Several of plaintiff's allegations seek to assert inaccuracies that do not fall into either of the two categories described above. In particular, plaintiff alleges that defendant's failure to report a CII D indicator, failure to note that an account is being disputed, and/or reporting a debt as "in collections"/"charged off" are inaccurate. The court finds that several of these inaccuracies may state a claim under FCRA, but that the complaint's allegations are too conclusory as currently pleaded.

The first issue is whether the failure to report to a CII D indicator, or to otherwise note that a bankruptcy petition has been filed, makes reporting "inaccurate" under FCRA. The court finds that the complaint could state a claim on this basis. If the fact of the bankruptcy is not noted, the reporting may be misleading, because the existence of a bankruptcy filing is information that could affect the decision-making of potential creditors. See, e.g., Doster, 2017 WL 264401, at *6 (granting leave to amend to support allegations that the credit report "contained no indication at all that the debts were the subject of a pending bankruptcy"). Moreover, the omission of the bankruptcy filing from a credit report may render other aspects of the reporting misleading. For example, if a creditor sees that an account is "in collections," but no bankruptcy filing is noted, the creditor may believe that the account is being actively collected upon even though collection efforts have been stayed by the bankruptcy. The same is true regarding the alleged failure to

report that an account is being disputed. This is information that could also adversely influence credit decisions if omitted.

As to the allegations that accounts were reported as "in collections" or "charged off," the complaint does not contain enough detail to determine whether this inaccuracy could state a claim under FCRA. Without more context, it is not clear whether plaintiff claims that the furnisher is reporting that the account is <u>currently</u> in collections (which is potentially misleading in light of the bankruptcy stay) or simply that the account <u>was</u> in collections at some point in the past. The latter would not be misleading, assuming that it is factually accurate and that the bankruptcy filing is noted.

In summary, although the court finds that these alleged inaccuracies could state a claim under FCRA, the complaint as pleaded is too conclusory to tell. With only a few sentences devoted to each disputed account, it is not clear whether a reasonable potential creditor could actually be misled. It is not clear, for example, if there is any other information in the credit report that discloses the existence of the bankruptcy filing. Thus, the court will provide plaintiff leave to amend to plead additional factual detail to state a plausible claim that these alleged inaccuracies were misleading in context.

### iv. Whether the Effect of Confirmation Is a Nonactionable Dispute over the "Legal Validity" of a Debt

In the alternative, defendant argues that FCRA only permits claims based on inaccuracies that are <u>factual</u> in nature, but all of plaintiff's alleged inaccuracies are disputes about the "legal status" of the debt. Defendant relies on the Ninth Circuit's decision in <u>Carvalho v. Equifax</u>, which held that "reinvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts." <u>Carvalho v. Equifax Info. Servs., LLC</u>, 629 F.3d 876, 892 (9th Cir. 2010); <u>see also</u> <u>Chiang v. Verizon New England Inc.</u>, 595 F.3d 26, 38 (1st Cir. 2010) ("[Under FCRA,] a plaintiff's required showing is <u>factual</u> inaccuracy, rather than the existence of disputed legal questions."). Defendant argues that the complaint here relies entirely on the impact that a confirmed Chapter 13 plan has upon the legal status of the debt, and that this sort of dispute is not

12

1   actionable as an FCRA reinvestigation claim.

2   Defendant's argument appears to be directed primarily at plaintiff's first theory of
3   inaccuracy: the effect of a confirmed Chapter 13 plan upon loan balances and
4   delinquencies. Whatever merit this argument might have in that context, the court need
5   not reach the issue because it has already held that this alleged "inaccuracy" does not
6   state a claim as a matter of law.

7   To the extent that defendant seeks to characterize other alleged inaccuracies in
8   this case as disputes about the "legal validity" of a debt, its argument fails. Carvalho's
9   holding is premised on the idea that CRAs are "not tribunals," and "are ill equipped to
10  adjudicate contract disputes." 629 F.3d at 891. Reporting that a debtor has filed for
11  bankruptcy protection on a credit report does not require furnishers and CRAs to engage
12  in a "tribunal"-like legal analysis. Either the debtor has filed for bankruptcy protection, or
13  she has not, as a matter of fact. The same logic applies to the alleged failure to note that
14  an account was disputed. The court therefore declines to dismiss the complaint on this
15  ground.

### v. Application to Inaccuracies Alleged in the Complaint

In this case, plaintiff alleges inaccuracies in her credit report concerning a single account with Diamond Resorts International Club, Inc. Plaintiff alleges that Diamond Resorts International Club, Inc. reported a $13,638.00 balance even though $0.00 is owed under the confirmed Chapter 13 plan, and is not reporting "the correct CII indicator." Compl. ¶ 99. Plaintiff further alleges that Experian failed to conduct a reasonable investigation into these alleged inaccuracies. Compl. ¶ 121. Based on the above principles, the inaccuracy concerning the account balance is not actionable, but the omission of the CII D indicator may state a claim, if supplemented with additional factual detail as to why this reporting was misleading in context.

### 2. Whether Damages Have Been Sufficiently Pleaded

Defendant's other basis for dismissal is that the complaint does not sufficiently plead either actual or statutory damages. While the court ultimately agrees with

13

defendant on this point, it will provide plaintiff leave to amend to supplement her damages allegations.

### i. Statutory Damages

Statutory and punitive damages are only available under FCRA when a defendant "willfully fails to comply with" the law. 15 U.S.C. § 1681n(a)(1)(A); Syed v. M-I, LLC, No. 14-17186, 2017 WL 242559, at *7 (9th Cir. Jan. 20, 2017). If a defendant's noncompliance is merely negligent, plaintiff is entitled only to "any actual damages sustained by the consumer as a result [of noncompliance]." 15 U.S.C. § 1681o(a)(1).

To support her claim for statutory damages, plaintiff alleges that the furnisher "intentionally and knowingly reported misleading and inaccurate account information to the CRAs that did not comport with well-established industry standards." Both the CRA and furnisher "failed to conduct a reasonable investigation" and "would have known" that their reporting did not comport with industry standards.

In Safeco Insurance Company of America v. Burr, 551 U.S. 47 (2007), the Supreme Court held that "willfully," as used in FCRA, encompasses knowing violations or a "reckless disregard of statutory duty." Id. at 57. However, Safeco further held that a violation of FCRA was neither willful nor reckless when it relied on an interpretation of law that "albeit erroneous, was not objectively unreasonable." Id. at 69. Defendant claims that this "safe harbor" precludes statutory damages here, arguing that its understanding of what FCRA required in this context is objectively reasonable and has been unanimously adopted by courts in this district.

Plaintiff appears to concede that statutory damages are not available by not responding to the defendant's "willfulness" argument in the briefing. The court finds that statutory damages are not available as to plaintiff's first theory of inaccuracy—the effect of the confirmed Chapter 13 plan on account balances and delinquencies. Given the body of law in this district against plaintiff's primary theory of liability, defendant's understanding of its FCRA obligations was not "objectively unreasonable" on this point. Safeco, 551 U.S. at 69.

14

1  Plaintiff's willfulness allegations appear to derive from the noncompliance with
2  Metro 2 standards. The ostensible argument is that statutory damages are available
3  because defendant knew about the industry standards and intentionally chose not to
4  follow them. However, the fact defendant was aware of the industry standards does not
5  mean that it was aware that compliance with industry standards was mandated by FCRA
6  (indeed, it is not). Thus, defendant could be knowledgeable about Metro 2 standards, but
7  choose not follow them, which would not render its violations willful.
8  The court therefore concludes that the complaint as pleaded does not sufficiently
9  allege statutory damages. It is not clear to the court, however, that amendment would be
10 futile, especially with respect to the inaccuracies that this court has found are potentially
11 actionable. The court will therefore provide plaintiff leave to amend to attempt to plead
12 facts showing that defendant acted "willfully" as to these inaccuracies.

### ii.  Actual Damages

14 FCRA does not require allegations of a "denial of credit or transmission of the
15 report to third parties" to establish actual damages. Guimond v. Trans Union Credit Info.
16 Co., 45 F.3d 1329, 1333 (9th Cir. 1995). However, the law does require that plaintiff
17 suffered some actual harm as a result of defendant's alleged FCRA violations.
18 Here, plaintiff alleges that as "a direct and proximate result of Defendants' willful
19 and untrue communications," she "suffered actual damage including but not limited to
20 inability to properly reorganize under Chapter 13, reviewing credit reports from all three
21 consumer reporting agencies, time reviewing reports with counsel, sending demand
22 letters, diminished credit score, and such further expenses in an amount later to be
23 determined at trial." It is not clear what plaintiff means by "inability to property reorganize
24 under Chapter 13." Plaintiff does not allege that defendant's reporting somehow
25 interfered with the bankruptcy process. Thus, whether actual damages have been
26 pleaded hinges on whether a "diminished credit score," prelitigation attorneys' fees, or
27 costs in reviewing credit reports and sending demand letters are recoverable as "actual
28 damages."

There is persuasive authority suggesting that a diminished credit score, standing alone, does not represent actual damages. King v. Bank of Am., N.A., No. C-12-04168 JCS, 2012 WL 4685993, at *6 (N.D. Cal. Oct. 1, 2012) ("[A] mere drop in Plaintiff's credit score without any damages actually incurred would likely not satisfy the actual damages requirement.") (citations omitted); Duarte v. J.P. Morgan Chase Bank, No. CV131105GHKMANX, 2014 WL 12561052, at *4 (C.D. Cal. Apr. 7, 2014) ("Plaintiff asserts that . . . the inevitable consequence of Defendant's alleged negative reporting—impaired credit—constitutes actual damage for purposes of the CCRAA. This is incorrect."). This is logical because, absent an allegation that plaintiff "was denied credit, lost credit, had his credit limits lowered, or was required to pay a higher interest rate for credit," the negative effects of a lowered credit score did not cause "actual" harm. See Young v. Harbor Motor Works, Inc., No. 2:07CV0031JVB, 2009 WL 187793, at *5 (N.D. Ind. Jan. 27, 2009).

Moreover, plaintiff appears to concede that the costs associated with requesting a credit report, discovering the alleged inaccuracies, and sending a dispute letter are not recoverable. The Ninth Circuit has not addressed this issue, but the Second Circuit has held that "actual damages" may include "out-of-pocket expenses for attorney's fees incurred by a plaintiff prior to litigation of his FCRA claims." Casella v. Equifax Credit Info. Servs., 56 F.3d 469, 474 (2d Cir. 1995). However, "expenses incurred merely to notify [CRAs] of inaccurate credit information, and not to force their compliance with any specific provision of the statute, cannot be compensable as 'actual damages' for a violation of the FCRA." Id. Applying this distinction, plaintiff's current damages allegations amount to no more than expenses to notify furnishers and CRAs of the alleged inaccuracies. This is a process that FCRA contemplates, 15 U.S.C. § 1681s-2(a)(1)(B)(i), and is thus not itself a source of damages resulting from an FCRA violation.

The court therefore finds that the complaint as pleaded does not sufficiently allege actual damages. However, although the complaint currently does not allege emotional distress damages, plaintiff's counsel represented at the hearing that he intended to

16

1  amend the complaint to add allegations of emotional distress. Damages for "emotional
2  distress and humiliation" as a result of an FCRA violation are recoverable as actual
3  damages in the Ninth Circuit. Guimond, 45 F.3d at 1333. Thus, the court will grant
4  plaintiff leave to amend to plead facts showing actual damages.

### 3. The CCRAA Claim

The sole furnisher defendant in this case, Diamond Resorts International Club, Inc., was voluntarily dismissed with prejudice on January 18, 2017. Dkt. 33. As the CCRAA claim was asserted only against this furnisher, this claim is dismissed. Only a single claim under FCRA against Experian may be asserted by plaintiff in the amended complaint.

### CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is GRANTED. Plaintiff is granted leave to file an amended complaint within 21 days of the date of this order. The amended complaint must sufficiently plead actual inaccuracies based upon, e.g., (i) a failure to report the fact of the bankruptcy filing or to use the correct CII D indicator; or (ii) a failure to report that an account is being disputed. Plaintiff may not rely on a failure to update account balances to reflect the confirmed Chapter 13 plan, and may not rely on the failure to comply with Metro 2 standards—except as those standards pertain to actual inaccuracies, such as a failure to note the bankruptcy filing or the disputed nature of the account. The amended complaint must also sufficiently allege either statutory or actual damages. The amended complaint may not add new claims or parties without leave of court or the consent of defendant.

**IT IS SO ORDERED.**

Dated: March 20, 2017

_____
PHYLLIS J. HAMILTON
United States District Judge